**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| DARNELL MITCHELL, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:15-cv-02660-JPM-cgc |
| v. | ) | Cr. No. 2:10-cr-20299-JPM-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION**
**PURSUANT TO 28 U.S.C. § 2255**
**AND**
**VACATING JUDGMENT IN CRIMINAL CASE**

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant Darnell Mitchell ("Mitchell"), Bureau of Prisons register number 24254-076, who is currently incarcerated at the United States Penitentiary in Terre Haute, Indiana. (§ 2255 Mot., *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the § 2255 Motion.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 10-20299

On August 24, 2010, a federal grand jury returned a single-count indictment, charging that, between on or about April 24, 2010, and on or about April 28, 2010, Mitchell, a convicted felon, possessed a Hi-Point 9mm caliber semi-automatic pistol in violation of 18 U.S.C. § 922(g)(1). (Indictment, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.),

ECF No. 1.)  The factual basis for the charge is stated in the presentence investigation report

("PSR"):

### **The Offense Conduct**

5.      According to the investigative file, on April 24, 2010, at approximately 7:54 a.m., officers with the Memphis Police Department responded to a call at 330 Hollowell in Memphis, TN.  The victim, Gregory Gray, advised that he, Darrell Lackland, and Harry Upchurch, had been threatened with a pit bull dog and robbed at gunpoint by **Darnell Mitchell** at approximately 6:30 a.m.  Mr. Gray advised that **Mitchell** put a pit bull into Mr. Upchurch's truck which was occupied by Mr. Gray, Mr. Lackland, and Mr. Upchurch.  The victims told **Mitchell** to get the dog out of the vehicle at which time **Mitchell** got into the truck, pulled out a firearm, and pointed it back and forth at the victims.  He demanded that all three victims give him their money, cell phones, and jewelry. **Mitchell** threatened to "put something hot" into the victims if they did not give him all of their possessions.  The victims obliged.  **Mitchell** then pointed the gun at Mr. Upchurch's head and made him drive to Benford and Hollowell where **Mitchell** forced Mr. Gray and Mr. Lackland out of the vehicle.  **Mitchell** kept Mr. Upchurch at gunpoint and forced him to drive off.  Mr. Gray and Mr. Lackland returned to 330 Hollowell and notified the police.

. . . .

7.      On April 27, 2010 at approximately 11:15 p.m., officers with the Memphis Police Department responded to a shots fired call in the area of Farrington and Modder. Upon arrival, officers observed a vehicle sitting idle in the middle of Silverage Street with no lights turned on.  A traffic stop was conducted and **Mitchell** exited the vehicle abruptly.   **Mitchell** smelled of intoxicant, had slurred speech, and could not walk straight.  **Mitchell** was subsequently detained.  Jacqueline Fiveash, who also occupied the vehicle, was observed by officers making furtive movements under the passenger seat.  She was also detained.  Officers recovered from underneath the passenger seat a ***Hi-point 9 mm pistol, serial number P132251 which was loaded with a round in the chamber and a magazine with ten more rounds***.  The firearm came back as stolen.  **Mitchell** and Ms. Fiveash were taken into custody.

8.      **Mitchell** was arrested and placed in a squad car, where he kicked the driver's side rear door and banged his head against the window repeatedly.  He was ordered to stop damaging the vehicle, but he refused.  Officers attempted to stop this from continuing and **Mitchell** kicked and spit at the arresting officers.  A chemical agent had to be used for his own safety.  A medical unit made the scene but **Mitchell** refused treatment.  He further refused to submit to a blood alcohol test. A check revealed his driver's license was suspended at the time of his arrest.

9.      While on the scene, officers were flagged down by Mr. Gray, who advised that **Mitchell** had robbed him on April 24, 2010. A check verified that Mr. Gray had previously filed a report. **Mitchell** and Ms. Fiveash were taken to felony response for further investigation. **Mitchell** did not sign a rights waiver or make a statement.

10.     Upon arriving at felony response, Ms. Fiveash provided a statement to investigators indicated that she had escorted **Mitchell** and her cousin, Josh LNU, to a store. According to Ms. Fiveash, her cousin exited the vehicle to go into the store, at which time **Mitchell** showed her a firearm and told her to let him drive. **Mitchell** then got into the driver's seat and he told her they were going to his aunt's house. Soon after that, Ms. Fiveash reported she heard shots being fired. Ms. Fiveash reported that after she heard the shooting, officers pulled behind her vehicle and **Mitchell** stated "Oh shit the police are pulling us over and I got this gun." Ms. Fiveash advised that **Mitchell** then put the firearm under her seat. Ms. Fiveash reported that the gun belonged to **Mitchell**.

11.     On April 29, 2010, Ms. Fiveash gave a signed witness statement advising that **Mitchell** had possessed the firearm on April 27, 2010 and he was shooting the gun in the air prior to the officers' arrival. Investigators determined that Ms. Fiveash was not associated with the April 24, 2010 robbery and she was released without charge on April 29, 2010.

12.     A check revealed that **Mitchell** was a convicted felon at the time of his arrest. The firearm was not manufactured in the State of Tennessee and therefore traveled in interstate commerce.

13.     On April 30, 2010, Darrell Lackland was shown a police photo line-up and positively identified **Mitchell** as the person responsible for robbing him on April 24, 2010. Mr. Lackland gave a signed victim statement citing that **Mitchell** had threatened him with a pit bull and then robbed him at gunpoint. Some time later, Mr. Upchurch also identified **Mitchell** as the person who had forced him to drive off at gunpoint, leaving Mr. Lackland and Mr. Gray.

(PSR ¶¶ 5, 7-13.)

A jury trial commenced on May 7, 2012, and, on May 9, 2012, the jury returned a guilty verdict on the sole count of the Indictment. (Min. Entries, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF Nos. 82-83, 85.) At a sentencing hearing on February 28, 2013, the Court sentenced Mitchell to a term of imprisonment of 300 months to be followed by a

five-year period of supervised release.  (Min. Entry, *id.*, ECF No. 110.)[1]  Judgment was entered on March 4, 2013.  (J. in a Criminal Case, *id.*, ECF No. 112.)  Mitchell filed a notice of appeal the same day.  (Notice of Appeal, *id.*, ECF No. 114.)  The Sixth Circuit affirmed.  *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014).  The Supreme Court denied Mitchell's petition for a writ of certiorari on October 6, 2014.  *Mitchell v. United States*, 135 S. Ct. 158 (2014).

### B.   Case Number 15-2660

On October 2, 2015,  pursuant to 28 U.S.C. § 2255, Mitchell filed a *pro se* Motion  Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion").  (§ 2255 Mot., *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1.)  The motion presents the following issues:

  1.   "Ineffective assistance of counsel" at the motion to suppress stage (*id.* at PageID 7);

  2.   "illegal sentence" (*id.* at PageID 4);

---

[1] The 2011 edition of the *Guidelines Manual* was used to calculate Mitchell's sentencing range.  Pursuant to § 2K2.1(c)(1)(A), cross-referencing § 2X1.1 and § 2B3.1 of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is 20 if the defendant used or possessed any firearm or dangerous weapon in connection with the commission robbery.  (PSR ¶ 17.)  Mitchell received a six-level enhancement because the firearm was not discharged but was otherwise used, U.S.S.G. § 2B3.1(b)(2)(B), a four-level enhancement because victims were abducted to facilitate commission of the offense or to facilitate escape, U.S.S.G. § 2B3.1(b)(4)(A), and a two-level enhancement because the offense involved carjacking, U.S.S.G. § 2B3.1(b)(5), resulting in a total offense level of 32.  (PSR ¶¶ 18-20, 26.)  Given Mitchell's criminal history category of VI, the guideline sentencing range would have been 210-262 months.

Because of his prior convictions for violent felonies, however, Mitchell was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"),  18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4.  Pursuant to U.S.S.G. § 4B1.4(b)(3)(A), the offense level was 34.  (PSR ¶ 27.)  The guideline sentencing range was 262-327 months.  Mitchell was also subject to a mandatory minimum sentence of 15 years, or 180 months, pursuant to 18 U.S.C. § 924(e)(1).

3. "ineffective assistance of counsel" "for failing to object to the testimony of government witnesses" (*id.* at PageID 8);[2] and

4. "ineffective assistance of trial counsel" for failing to raise specific issues and causing cumulative prejudice (*id.* at PageID 5).

On February 24, 2016, the Court directed the Government to respond. (Order, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 5.) The Government filed its response on April 19, 2016. (Resp., *id.*, ECF No. 8.) Mitchell did not file a reply.

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006).

A § 2255 motion is not a substitute for a direct appeal. *See Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and

_____

[2] Although this claim is raised third in Mitchell's § 2255 Motion, the Court considers it last because it concerns the cumulative effect of all ineffective of counsel claims.

direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 699-700 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III. ANALYSIS

### A. Relief Based on *Johnson v. United States*

Mitchell argues that following the Supreme Court's recent holding in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015), his prior convictions for robbery and evading arrest in an automobile no longer qualify as violent felonies, and that he is therefore entitled to relief. (Mem. in Supp. of § 2255 Mot. at PageID 28, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1-1.). The Government concedes that *Johnson* applies retroactively in this case, and as such, Mitchell is entitled to a reduction in his sentence. (Resp. at 5, *id.*, ECF No. 8.)

The Armed Criminal Career Act ("ACCA") provides in relevant part that

a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

"Violent felony" is defined by the ACCA as a felony "that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The Supreme Court held in *Johnson* that the residual clause of the ACCA, encompassing all felonies that "involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague and that the application of the residual clause to increase a sentence violated the Due Process Clause. 135 S. Ct. 2551, 2557 (2015). The *Johnson* decision applies only to the residual clause and "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563.

The Supreme Court has made *Johnson*'s rule retroactive to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (Apr. 18, 2016) ("*Johnson* is thus a substantive decision and so has retroactive effect . . . .").

The prior convictions used to qualify Mitchell as an armed career criminal were: (1) a 1988 Tennessee conviction for robbery (PSR ¶ 37); (2) a 2003 Tennessee conviction for robbery (*id.* ¶ 43); and (3) a 2003 Tennessee conviction for intentionally evading arrest in an automobile (*id.* ¶ 44). At the time of Mitchell's sentencing, his 2003 conviction for intentionally evading arrest in an automobile fell within the scope of ACCA's residual clause, permitting the Court to

classify him as an armed career criminal and impose an enhanced sentence upon his conviction. *See United States v. Franklin*, 622 F. App'x 501, 514 (6th Cir. 2015) (vacating a petitioner's sentence because his Tennessee felony evading arrest conviction no longer qualifies as a predicate offense under the ACCA); *United States v. Doyle*, 678 F.3d 429, 430 (6th Cir. 2012) (holding that "Class E felony evading arrest under Tennessee law" falls within the purview of ACCA's residual clause). Thus, following the retroactive decision in *Johnson*, Mitchell's intentionally evading arrest in an automobile conviction is no longer a predicate offense under the ACCA. Mitchell has only two other predicate convictions which qualify as predicates under the ACCA and, therefore, is not subject to the ACCA's fifteen-year mandatory minimum sentence.

Because Mitchell is entitled to relief on the *Johnson* issue raised in his § 2255 Motion, he is entitled to resentencing.[3] The Court next considers whether Mitchell is entitled to any other relief based on his ineffective assistance of counsel claims.

### B. Relief Based on Ineffective Assistance of Counsel

The Court construes Mitchell's § 2255 Motion to assert four discrete grounds of ineffective assistance of Mr. Bell's counsel: (1) failure to raise issues regarding the Motion and Amended Motion to Suppress; (2) failure to object to the testimony of the Government's witnesses; (3) failure to argue that Mitchell neither actually nor constructively possessed a firearm in violation of 18 U.S.C. § 922(g)(1) at the time of his arrest; and (4) failure to raise specific issues caused a cumulative effect and cumulative prejudice.

---

[3] If a court determines that a petitioner is entitled to any relief under 28 U.S.C. § 2255, "the court shall vacate and set the judgment aside." 28 U.S.C. § 2255(b). "Once the judgment is vacated, the district court must proceed to grant one of four remedies 'as may appear appropriate': (1) 'discharge' the prisoner, (2) 'resentence' the prisoner, (3) 'grant a new trial,' or (4) 'correct' the sentence." *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013).

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (citations and internal quotation marks omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.

---

[4] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

### 1. Failure to raise issues regarding the motion and amended motion to suppress

In his first ground for ineffective assistance of counsel, Mitchell alleges that, had his trial counsel, Assistant Public Defender David Bell, "performed/provided effective assistance, the motion to suppress would have been granted." (Mem. in Supp. of § 2255 Mot. at PageID 17, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1-1.) In support of this conclusion, Mitchell asserts that Bell "failed to raise the fact[ that] Movant's Fourth Amendment right was violated due to his illegal detention. . . . A competent attorney would have raised the issue of Movant's illegal detention." (*Id.* at PageID 17-18.) Mitchell claims that Bell failed to identify and present "case[ ]law which discusses how occupants traveling in a stopped vehicle have standing to challenge the legitimacy of the stop as a seizure of his or her person, even if they may lack standing to challenge the search of a vehicle over which they have no possessory or ownership interest." (*Id.* at PageID 18.) Mitchell argues that Bell "should have concluded that the traffic stop was not valid; the detention after the traffic stop was unlawful; therefore the police conduct violated the Fourth Amendment, then all that followed is suppressible as 'fruit of the poisonous tree.'" (*Id.* at PageID 27.) Mitchell argues that, had Bell "challenged the legality of the initial stop[,] the court's determination would have proved the initial stop was in fact unconstitutional. Movant's instant charge . . . would not have stood . . . ." (*Id.* at PageID 19.)

The record contradicts Mitchell's claims as to the first ground of ineffective assistance of counsel. Bell, in fact, explicitly argued that the Memphis Police Department violated Mitchell's Fourth Amendment rights on April 27, 2010. (Am. Mot. to Suppress at 3-6, *United States v.*

*Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No. 41.)  Bell also explicitly argued that "all evidence seized as a result of [the purportedly unconstitutional traffic stop] should be suppressed as fruit of the poisonous tree."  (*Id.* at 6.)  Bell again raised these arguments in a post-suppression hearing memorandum.  (Post-Hr'g Mem. in Supp. of Mot. to Suppress at 11-17, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No. 65.)  Bell raised similar constitutional arguments again in the written objections to the Magistrate Judge's Report and Recommendations.  (Def.'s Objs. to R. & R. at 1-4, *id.*, ECF No. 71.)  The parties addressed these arguments before the Magistrate Judge at the October 24, 2011, suppression hearing. (10/24/2011 Tr. at 118:23-121:11, *id.*, ECF No. 62.)  Each of these briefs reflected ample legal research.  Thus, Bell made the exact legal challenges that Mitchell asserts Bell failed to make. Nevertheless, the Court denied the Amended Motion to Suppress, and the jury found Mitchell guilty of the offense charged.  The Court further notes that Mitchell appears to be attempting to relitigate his Amended Motion to Suppress, which he may not do via § 2255 motion, albeit under the pretense of an ineffective assistance of counsel claim.  *See Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).  As such, Mitchell has failed to establish the first prong of the *Strickland* test for ineffective assistance of counsel as to this particular ground.

### 2. Failure to object to the testimony of the Government's witnesses

In his second ground for ineffective assistance of counsel, Mitchell alleges that Bell failed to "object to the testimony of government witnesses: Gregory Gray, Harry Upchurch, and Darrell Lackland," which Mitchell asserts Bell should have done because the testimony of these individuals "had nothing to do with the instant offense and was clearly irrelevant."  (Mem. in Supp. of § 2255 Mot. at PageID 35, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1-1.)  Mitchell specifically claims that Bell should have objected to

12

Gray, Upchurch, and Lackland's testimony as "irrelevant and inadmissible under Federal Rules of Evidence[] Rules 402[ and] 404(b)." (*Id.*) The testimony Mitchell believes to be irrelevant is summarized in PSR ¶ 5:

> 5. According to the investigative file, on April 24, 2010, at approximately 7:54 a.m., officers with the Memphis Police Department responded to a call at 330 Hollowell in Memphis, TN. The victim, Gregory Gray, advised that he, Darrell Lackland, and Harry Upchurch, had been threatened with a pit bull dog and *robbed at gunpoint* by **Darnell Mitchell** at approximately 6:30 a.m. Mr. Gray advised that **Mitchell** put a pit bull into Mr. Upchurch's truck which was occupied by Mr. Gray, Mr. Lackland, and Mr. Upchurch. The victims told **Mitchell** to get the dog out of the vehicle at which time **Mitchell** got into the truck, *pulled out a firearm*, and *pointed it back and forth at the victims*. He demanded that all three victims give him their money, cell phones, and jewelry. **Mitchell** threatened to "put something hot" into the victims if they did not give him all of their possessions. The victims obliged. **Mitchell** then *pointed the gun* at Mr. Upchurch's head and made him drive to Benford and Hollowell where **Mitchell** forced Mr. Gray and Mr. Lackland out of the vehicle. **Mitchell** kept Mr. Upchurch *at gunpoint* and forced him to drive off. Mr. Gray and Mr. Lackland returned to 330 Hollowell and notified the police.

(PSR ¶ 5 (emphasis added).)

Evidence is relevant if it tends to make a fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). "Typically, [background] evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Heflin*, 600 Fed. App'x 407, 411-12 (6th Cir. 2015) (alteration in original) (quoting *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)).

The Court finds that the testimony at issue was relevant and admissible because it established that Mitchell engaged in conduct prohibited by 18 U.S.C. § 922(g) as charged in the Indictment. On August 24, 2010, a federal grand jury indicted Mitchell with one count of violating 18 U.S.C. § 922(g) "[b]etween on or about April 24, 2010 and on or about April 28, 2010." (Indictment, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No.

1.)  Although  Gray, Upchurch, and Lackland testified as to events that occurred three days prior to Mitchell's April 27, 2010, arrest, their testimony nevertheless is probative of the fact that, during the time period charged in the Indictment, Mitchell, a convicted felon, possessed a firearm in violation of 18 U.S.C. § 922(g).  Because the testimony was relevant to establishing the offense as charged, Bell did not deficiently serve his client by failing to raise an unqualified objection.  Moreover, Mitchell has not established that Bell's failure to raise an objection to their testimony was prejudicial.  Because the testimony was relevant, it would have been admitted over such an objection.  Accordingly, there is no basis on which to grant Mitchell's § 2255 Motion as to this particular ground.

### 4.  Failure to argue that Mitchell neither actually nor constructively possessed a firearm at the time of his arrest

In his third ground for ineffective assistance of counsel, Mitchell alleges that Bell failed to argue at trial and in a motion for acquittal that Mitchell "was not in actual possession nor constructive possession of the firearm which was found in the vehicle in the night of Movant's arrest."  (Mem. in Supp. of § 2255 Mot. at PageID 36, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), EFC No. 1-1.)  Mitchell also posits that, at trial, Bell "did not bring to the courts [sic] attention that Movant was not inside the vehicle when Lt. Martin made his alleged traffic stop."  (*Id.*)

The trial transcript reflects that Bell did attempt to establish that Mitchell never actually possessed the firearm during cross-examination of Sgt. Robin Hulley.  (5/8/2012 Tr. at 331:23-337:8, *United States v.* Mitchell, No. 2:10-20299-JPM-1 (W.D. Tenn.), ECF No. 118.)  During cross-examination by Bell, Sgt. Hulley testified that she was unable to recover latent fingerprints from the firearm using a "powder test" (*id.* at 337), and that she did not thereafter perform a "Super Glue" test (*id.* at 335).  The Government nevertheless presented sufficient evidence to

persuade the jury that Mitchell possessed a firearm in violation of 18 U.S.C. § 922(g) as charged in the Indictment. Given the testimony of Gray, Upchurch, Lackland, and Fiveash that Mitchell possessed a firearm on April 24, 2010, and April 27, 2010, Bell could not be considered deficient for failing to further argue that Mitchell did not actually or constructively possess the firearm. Additionally, Bell's strategic choices relating to Mitchell's defense are afforded significant deference. *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." (quoting *Strickland*, 466 U.S. 690-91)).

With respect to the claim that Bell failed to raise these issues in a motion for acquittal, Bell did, in fact, move for Mitchell's acquittal pursuant to Fed. R. Crim. P. 29(a) ("Rule 29 motion") after the Government rested. The Court denied the motion for judgment of acquittal as follows:

> **MR. BELL:** Your Honor, we make our motion for judgment of acquittal at this time.
>
> **THE COURT:** All right. The evidence is construed in the light most favorable to the nonmoving party. In this case, this is a 922(g) case. The government has submitted evidence from which a jury could find that each of those elements are met and that, in fact, the defendant did knowingly possess the firearm as charged in the case. The court [sic] doesn't make any finding on that, it's just that there is evidence to support the government's theory which is sufficient to allow this matter to go to the jury. So the motion as set out is denied, and we should be ready to proceed.

(5/8/2012 Tr. at 358:23-359:10, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No. 118.) The Court did not entertain further argument from Bell on the Rule 29 motion. Bell renewed his Rule 29 in a sidebar after the defense rested, and the Court again denied the motion. (Min. Entry, *id.*, ECF No. 85.) Despite Mitchell's contentions, an attorney need not make a Rule 29 motion in writing, and need not specify the grounds for such a motion.

*United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979) (quoting *United States v. Jones*, 174 F.2d 746, 748 (7th Cir. 1949)).  Thus, Bell was not deficient in failing to raise specific legal theories as related to the facts of the case in his Rule 29 motions.

With respect to Mitchell's claim that Bell failed to raise at trial that Mitchell was not in the gray Chrysler Sebring at the time Lt. Martin initiated a traffic stop, the record again contradicts Mitchell's assertion.  The Government's witnesses testified to seeing Mitchell inside the vehicle at the time of the traffic stop.  On direct examination by the Government, Fiveash gave the following testimony:

> **Q.**     But it's your testimony that the defendant also fired shots?
>
> **A.**     Yes, he did.
>
> **Q.**     Did he fire them from inside the car or did he stick his arm out the window?
>
> **A.**     He stuck his arm out the window.
>
> **Q.**     What happened after these shots were fired?
>
> **A.**     The police got behind us.
>
> **Q.**     And what happened after the police got behind you?
>
> **A.**     They pulled us over, and I got out of the car.
>
> **Q.**     Okay.  Let's take that step-by-step.  As the police started to pull you over, what, if anything, happened inside the car?
>
> **A.**     Darnell handed me a firearm.

(5/8/2012 Tr. at 191:20-192:8, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No. 118.)  Thus, Fiveash's testimony indicates that Mitchell was inside the vehicle at the time of the traffic stop.  Under direct examination by the Government, Lt. Martin gave the following testimony:

**Q.** Were you able to see inside this vehicle you had pulled over?

**A.** Correct.

**Q.** And what, if anything, can you describe to the jury that you saw going on inside this vehicle.

**A.** Okay. As I pulled the vehicle over, as officer safety, we tend to try to watch to see what is going on inside the vehicle. I could notice that the driver was doing some furtive movements in the front of the car.

**Q.** Now, can you explain to the jury what you mean by furtive movements?

**A.** He was reaching down, doing something toward the floorboard.

**Q.** Did you think he was hiding something?

**A.** Well, at the time, because of the shots fired called, I am assuming that possibly he had a gun. I don't know what he's doing, so I'm trying to observe him to make sure he's not going to exit with a handgun or some kind of weapon.

**Q.** Now, around this time, did other police cars pull up to the scene?

**A.** Correct.

**Q.** And again, are you still making observations of what is going [on] inside the car?

**A.** Right, once the other units pulled up, I'm preparing to get out of the car. I had my weapon drawn, because like I said, it was a shots fired call. And as I walked up to the car, the individual jumped out of the car acting erratic.

**Q.** You said he [was] acting erratic?

**A.** Right, as if he was drunk or high on something. I could smell the alcohol coming from his person when he got out of the car.

**Q.** Did you recognize the person that got out of the car?

**A.** Yes.

**Q.** And who was the person that got out of the car?

**A.** Darnell Mitchell.

(*Id.* at 240:23-242:7.)  Lt. Martin's testimony likewise evinces that Mitchell was inside the vehicle at the time of the traffic stop.  Bell has no professional obligation to raise frivolous arguments or defenses at trial.  *See Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) (citing *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986)).  Accordingly, Bell's failure to specifically argue that Mitchell did not possess the firearm was not deficient under *Strickland*, and Mitchell fails to establish the first prong of the *Strickland* test for ineffective assistance of counsel.  As such, there is no foundation on which to grant Mitchell's § 2255 Motion as to this particular ground.

### 4. Failure to raise specific issues caused a cumulative effect and cumulative prejudice

In his fourth ground of ineffective assistance of counsel, Mitchell alleges that Bell's "errors and failure to raise specific issues . . . caused a cumulative effect and cumulative prejudice to movant's case."  (Mem. in Supp. of § 2255 Mot. at PageID 32, *Mitchell v. United States*, No. 2:15-cv-02660-JPM-cgc (W.D. Tenn.), ECF No. 1-1.)  Mitchell further claims that Bell's failure to raise "the lack of video recording/dash-mounted camera recording, and counsel's failure to raise the issue that movant was not in the vehicle when Lt. Martin first made the alleged traffic stop; and . . . failure to challenge the legality of the initial stop and detention of movant" prevented the Court from determining the constitutionality of the traffic stop.  (*Id.*)  Mitchell claims that these alleged failures on Bell's part "had a cumulative effect because the Magistrate Judge never reviewed or made a ruling on these issues aforementioned, so the issues or challenges were not made a[ ]part of the Report and Recommendation by the Magistrate Judge."  (*Id.*)

Again, the record contradicts Mitchell's allegations. As discussed above, Bell argued the constitutionality of the Memphis Police Department's traffic stop in the amended motion to suppress, at the suppression hearing, in the post-suppression hearing memorandum, and in the written objections to the Magistrate Judge's Report and Recommendation. The Magistrate Judge did, therefore, hear these arguments, and subsequently recommended, *inter alia*, that the Memphis Police Department did not violate Mitchell's Fourth Amendment rights, and that Mitchell "did not have a reasonable expectation of privacy in Ms. Fiveash's parent's vehicle and therefore lack[ed] standing to challenge the search of the vehicle." (R. & R. at 10, 12, *United States v. Mitchell*, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), ECF No. 70.) The Court adopted the Magistrate Judge's Report and Recommendation over the objections of Bell, made on behalf of Mitchell. (Order at 7-16, *id.*, ECF No. 77.)

With respect to Mitchell's allegation that Bell failed to obtain a video recording from a dash-mounted camera and present it at trial, on March 11, 2011, Bell filed a discovery request, seeking all items discoverable under Rule 16 of the Federal Rules of Criminal Procedure. (Disc. Req. at 1 (citing Fed. R. Crim. P. 16(a)(1)(E)), *id.*, ECF No. 23.) Rule 16(a)(1)(E) provides for discovery of "photographs" and "tangible objects" in the government's possession if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). The Government responded to Bell's request on April 18, 2011, indicating that evidence responsive to the request did not include any video recordings. (Resp. to Disc. Req. at 1, *United States v.* Mitchell, No. 2:10-cr-20299-JPM-1 (W.D. Tenn.), EC No. 24.) In other words, a video recording of the traffic stop did not exist, was not in the Government's

possession, or was not material to preparing the defense. Thus, the lack of video recording evidence is not the result of any deficient representation on Bell's part.

Moreover, because Mitchell has failed to demonstrate that Bell committed any individual errors, his claim of cumulative error fails. *See United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) ("In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."). There is, therefore, no foundation on which to grant Mitchell's § 2255 Motion as to this particular ground.

### D. Conclusion

For the foregoing reasons, Mitchell's § 2255 Motion is GRANTED IN PART and DENIED IN PART. Because Mitchell is entitled to relief on the *Johnson* issue raised in his § 2255 Motion, the judgment in criminal case no. 10-20299-JPM-1 is VACATED. The Probation Office is directed to prepare a supplemental Presentence Investigation Report. Defendant will be resentenced in underlying criminal case no. 10-20299-JPM-1. The parties may file position papers as to the sentence to be imposed and the procedure to be employed in imposing the sentence in criminal case no. 10-20299-JPM-1.

## III. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). When a district court partially grants a § 2255 motion to vacate and a petitioner merely seeks to challenge the relief granted, "he is appealing a new criminal sentence and therefore need not obtain a COA." *Ajan*, 731 F.3d at 631 (quoting

*United States v. Hadden*, 475 F.3d 652, 664 (4th Cir. 2007)).   Accordingly, the Court need not

consider whether Mitchell is entitled to a COA or entitled to appeal *in forma pauperis*.

IT IS SO ORDERED this 21st day of June, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE